Roberto Mancha, a minor, by his father and next friend, Antonio Mancha, Plaintiff-Appellant, *v.* Field Museum of Natural History *et al.,* Defendants-Appellees.

(No. 55386;

First District—May 2, 1972.

Stanley J. Horn, Steven B. Randall, and Harvey P. Levin, all of Chicago, for appellant.

Hauseman & Hoolehan, and Lord, Bissell & Brook, both of Chicago, and Scariano and Gubbins, of Chicago Heights, (Frank J. Broucek, Newell S. Boardman, and Michael P. Duncan, of counsel,) for appellees.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

This is an appeal from an order of the trial court holding that plaintiff's third amended complaint did not state a cause of action against any of the defendants, and dismissing the suit.

On March 16, 1966, plaintiff was a student in the seventh grade of the Medgar Evers School in School District No. 169. On that day he, together with a group of fellow students and the two defendant teachers, Murray Feltus and Elaine Chisholm, organized a trip to the Field Museum of Natural History. About 50 students, ranging in age from 12 to 15 years, were in the group. Plaintiff was 12 years old at the time. When they arrived at the Museum they were allowed to divide into smaller groups and to view the exhibits without supervision. Plaintiff, who was of Mexican descent, of his own volition joined a group composed of students of African descent. He alleges that he was accosted by several Caucasian youths not connected with the school, was beaten by them as a "nigger lover," and suffered serious injuries as a result of the attack.

Plaintiff charges that the School District was negligent in permitting the students to leave the school premises without adequate supervision; that the teachers, Feltus and Chisholm, were in charge and were negligent in failing to supervise activities of the plaintiff while on the premises of the Museum. He charges that the Museum created a condition of danger to the plaintiff by inviting and permitting large numbers of children of various ages, racial origin and ethnic background to visit the Museum without adequate supervision by its own personnel. The plaintiff further charges that the Museum was negligent in failing to supervise the premises and prevent the attack on plaintiff; that the incident was observed by an employee of the Museum; and that it was the duty of the Museum to protect plaintiff from damage and injury by apprehending the assailants.

The School District and the teachers admit that they were required to exercise reasonable care on such a trip, but deny that the duty extended to the risk of foreseeing and guarding against an assault on a student by an outsider. Plaintiff contends that he and his fellow students

were children of tender years for whom a higher standard of care was imposed. We proceed to consider the plaintiff's case against the School District and the teachers.

Plaintiff relies on *Kahn v. James Burton Co.*, 5 Ill.2d 614. In that case plaintiff alleged that defendants had actual or constructive knowledge of the fact that children were attracted to a dangerous condition which defendants took no steps to correct. The court held that where the owner or person in possession of land knows—or should know—that young children frequent the vicinity of a dangerous agency or defective structure existing on the land which is likely to cause injury to children because they are incapable of appreciating the risk involved, and where the expense or inconvenience is slight compared with the risk to the children, there is a duty upon the owner or person in possession or control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from the condition.

In *Lance v. Senior*, 36 Ill.2d 516, the *Kahn* case was considered, and the court there stated that *Kahn* dealt with the so-called "attractive nuisance" doctrine and recognized a trend in the law which sets forth precautions which an occupier of land is required to take to prevent injury to a visitor upon the circumstances and purposes of the visit and the burden of guarding against the injuries.

In the instant case we are not dealing with a dangerous agency or unsafe condition on land such as existed in *Kahn*, nor is there involved a defective or dangerous agency which foreseeably would attract children. The defendant Museum is a place of cultural enlightenment and learning, not a place with hidden dangers for the unwary. In *Kahn*, the court stated at page 622: "All men  *  *  *  must be held, in the absence of actual knowledge or notice, to have reasonably anticipated such occurrences as in the ordinary nature of things reasonable men should know will probably occur." It cannot be said that an assault on a 12-year-old boy in the Field Museum is an occurrence which a reasonable man would anticipate.

The rule set forth in *Lance v. Senior, supra,* applies to the case before us. There the court said at page 518:

"In many negligence cases no more than foreseeability is involved. And because so many actions grounded upon negligence involve familiar patterns of conduct, it is easy to forget that implicit in an allegation of negligence is the assertion of a failure to comply with the standard of care that the law requires—the assertion of a duty and its breach."

Thus, in the case before us implicit in plaintiff's allegations is the

assertion that the law imposed a duty upon the School District and teachers to guard against the risk that a 12-year-old boy would be assaulted while unsupervised at the Field Museum.

The court in *Lance v. Senior, supra,* also noted at page 518:

"After the event, hindsight makes every occurrence foreseeable, but whether the law imposes a duty does not depend upon forseeability alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also be taken into account."

In the instant case, the risk that a 12-year-old boy would be assaulted in a museum is minimal. The burden sought to be imposed on the defendant School District and teachers is a heavy one which would require constant surveillance of the children. A baseball game, a football game or a game of hopscotch played on school grounds might break up in a fight resulting in serious injury to one or more of the children. A teacher cannot be required to watch the students at all times while in school, on the grounds, or engaged in school-related activity. If the law imposed such burdens it would well discourage schools and teachers from affording opportunities to children to enjoy the many extracurricular activities. It has long been recognized that something other than classroom teaching is needed for a sound education. Learning is not confined to books.

The case of *Gubbe v. Catholic Diocese of Rockford,* 122 Ill.App.2d 71, involved facts similar to those in the case before us. There the plaintiff, a student at a private school, was assaulted by a fellow student on school grounds. Plaintiff alleged that the owner of the school, the school principal, and his teacher were under a duty to properly supervise the activities of the students, but improperly and inadequately supervised the recess areas of the school playground. The court held that the complaint did not allege sufficient facts on which defendants could be held liable.

The case before us is not one in which children are taken to a factory, a stone quarry, or a place where there is dangerous machinery, or where there might be a shooting or an assault. The Museum in question is itself a great educational enterprise which enables teachers, parents and children to learn much that could not be learned at school or elsewhere. At the Museum the students separated into groups and one group was assaulted by other children. To say that the teachers had a duty to supervise and discipline the entire Museum trip would be to ignore the realities of the situation and to make such trips impossible.

We have discussed the case thus far from the standpoint of a common law. The trial court felt that the common law disposed of the case and that it was not necessary to reach the question of the application of the

Tort Immunity Act and the School Code. The court, however, expressed its view that if it were to consider these questions they would afford additional reasons for ruling that the complaint in question was legally insufficient. The court sustained all of defendant's objections to the complaint.

As to the case against the defendant School District and the teachers, the applicability of the Tort Immunity Act and the School Code should be considered. The School Code [Ill. Rev. Stat. 1965, ch. 122, par. 24—24] provides:

> *"Maintenance of discipline.* Teachers   *   *   *   shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians."

This statute has been construed in *Woodman v. Litchfield Community School Dist. No. 12,* 102 Ill.App.2d 330. There the court held that the above-cited provision of the School Code "would protect a teacher from liability for mere negligence in supervision or maintaining discipline because of the status conferred; that of a parent or guardian in relation to all the pupils in the classroom." The court said further that no liability would attach to a parent or one having the relation of parent absent an event constituting willful or wanton conduct. In the case before us, no such event is alleged in the complaint, nor is any event in the complaint so characterized.

Under section 2—202 of the Tort Immunity Act (Ill. Rev. Stat. 1965, ch. 85, par. 2—202), a public employee is not liable for his acts in the execution or enforcement of any law unless such acts constitute willful or wanton negligence. In the instant case the defendant teachers were acting under the School Code, as set forth above, in maintaining discipline which included the supervision of the movement of the children in a school-related activity. Since defendants were enforcing the School Code at the time of the attack, plaintiff must allege facts amounting to willful or wanton negligence. Allowing the plaintiff to tour the Field Museum without supervision was an intentional act, but it was not an act which the defendant teachers knew—or should have known—would result in harm to the plaintiff or create an unreasonable risk of harm. No willful or wanton act or omission on the part of the teachers was alleged.

We proceed to a discussion of the counts of the complaint charging the Field Museum with negligence. Count III of the proposed third amended complaint alleges that the Museum created a condition of

danger to the plaintiff by permitting large numbers of school children of various ages, racial origin and ethnic background to visit the Museum without sufficient supervisory personnel of the Museum. The complaint, however, does not allege any previous incidents of violence which would charge the Museum with knowledge of such dangers to its visitors.

A person or institution in possession of property open to the public does not become liable for injuries to a visitor sustained in an attack by another visitor. (*O'Brien v. Colonial Village, Inc.*, 119 Ill.App. 2d 105.) The common law duty of reasonable care owed to persons lawfully on premises cannot be extended to a duty to guard against the criminal acts of a third person, absent knowledge of previous incidents or special circumstances which would charge the owners with knowledge of the dangers and the duty to anticipate it. (*O'Brien v. Colonial Village, Inc., supra.*) An owner of premises is not bound to anticipate the malicious or criminal acts of others by which damage is inflicted. *Altepeter v. Virgil State Bank*, 345 Ill.App. 585.

The third amended complaint does not allege any previous assaults on children or other violence at the Museum which would charge the Museum with the duty to anticipate an attack on a visitor to the premises. The allegation in the complaint that the Museum created a dangerous condition by permitting children of various ages and backgrounds to enter the premises is not a special circumstance which would charge the Museum with the knowledge of a potential danger of an assault on one of its visitors and the corresponding duty to anticipate and guard against it.

Count IV of the complaint charged that the attack on the plaintiff was observed by an employee of the Museum who failed to apprehend the assailants. This allegation fails to state the breach of any known duty owed by the Museum to the plaintiff. The apprehension of the assailants after the event could in no way be said to have prevented the incident or the injuries claimed to have resulted therefrom. In *Driscoll v. Rasmussen Corp.*, 35 Ill.2d 74, the court said at page 79:

"It is always unfortunate when a child gets injured  *  *  *, but a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon."

The third amended complaint failed to state a case against any of the defendants, and the motion to dismiss was properly allowed.

Judgment affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.