RITA MONTAGUE, Parent and Guardian of Michael Montague, Plaintiff-Appellant, *v.* SCHOOL BOARD OF THORNTON FRACTIONAL TOWNSHIP NORTH HIGH SCHOOL DISTRICT 215 *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 77-250

Opinion filed February 22, 1978.

Thomas J. Cisar, of Redding & Hyde, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Robert A. Knuti and Hugh C. Griffin, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court of Cook County allowing defendants' motion for summary judgment. By an amended complaint, defendants were charged with wilful and wanton misconduct

in connection with the supervision of a gym class during which plaintiff's son, Michael Montague, was injured. On the basis of the complaint and the depositions of Michael and the class instructor, defendant Richard Daugherty, the trial court held as a matter of law that defendants were not guilty of wilful and wanton misconduct.

Michael Montague was injured while attempting to "vault a horse" during a regularly scheduled gym class at Thornton Fractional Township North High School. The gym class consisted of 45 to 60 students. The physical education curriculum at Thornton was divided into segments lasting 3 or 4 weeks, each covering a different activity. The tumbling segment consisted of mandatory activities such as headstands and somersaults performed on a mat and optional participation in the vaulting exercises. Michael was injured during the last week of the tumbling segment while attempting a front vault.

The vaulting horse is approximately 4 feet long, 8 inches wide, and can be adjusted in height from 3 to 5½ feet. It has a four-leg base which is locked into position prior to use. A vault is accomplished by running and jumping on a springboard which is placed approximately 2 to 3 feet in front of the vaulting horse. The student lands on a rubber mat placed on the far side of the horse. The same springboard and vaulting horse had been in use at Thornton at least since Daugherty began teaching there in 1968. To his knowledge there never had been any accidents or injuries prior to the present occurrence.

At the beginning of the tumbling segment, Daugherty instructed the entire class on the proper use of the vaulting horse. As each student performed vaults, Daugherty observed and offered personal instruction to each student including Michael. Prior to the accident Michael had successfully performed the front vault approximately 30 times. Students were reminded at the beginning of each class to be careful when using the vaulting horse.

On March 15, 1973, Michael completed the compulsory tumbling exercises and had successfully performed four or five front vaults. The springboard and horse had been set up by the students that morning under Daugherty's supervision and the latter had personally checked the horse to make sure that it was locked in the proper position. As Michael was attempting another front vault, he fell and fractured his arm. He had no recollection of anything that occurred after he left the springboard. The springboard appeared to be in its normal position, and the mat had been properly placed. Michael testified that spotters were used only during somersault and trampoline exercises, while Daugherty testified that spotters were used during the vault exercises. Spotters position themselves at either side of the far end of the vaulting horse to assist the vaulter if necessary.

Daugherty observed the accident from 10 to 12 feet away. He believed that as Michael attempted the vault his lower leg, just below the knee, came in contact with the horse. Daugherty immediately placed a splint on Michael's arm and called an ambulance. Michael stated in his deposition that after the accident Daugherty told him the vaulting horse had been positioned too high. In his deposition, Daugherty stated that the horse had been positioned at the proper height.

Plaintiff contends that, on the basis of these facts, the trial court erred in finding that there was no genuine issue as to any material fact and in granting summary judgment for defendants. When the facts are viewed in the light most favorable to plaintiff, as they must (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 291 N.E.2d 202); we believe the decision of the trial court was correct.

■■■ The standard for the imposition of liability in cases involving supervision of school activities is set forth in section 24—24 of the School Code:

> "Teachers and other certified educational employees shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." (Ill. Rev. Stat. 1975, ch. 122, par. 24—24.)

This section confers *in loco parentis* status upon educational employees in matters relating to discipline and supervision of school activities. Teachers thus are not subjected to any greater liability than parents who are liable to their children for wilful and wanton misconduct, but not for mere negligence. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705.) It was further decided in *Kobylanski* that this limited liability for educational employees did not constitute an impermissible legislative classification in view of the unique role educators play in the intellectual development of school-age children. Since all school districts and teachers are treated alike under the statute, there is no violation of the constitutional prohibition against special legislation. Consequently, we must examine the facts of the present case to determine whether plaintiff raises a genuine issue of material fact as to whether defendant Daugherty was guilty of wilful and wanton misconduct in the supervision of his gym classes.

■■ While the result will vary with the facts and circumstances of each

case, a general definition of wilful and wanton misconduct has been formulated in Illinois. In *Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 254 N.E.2d 515, the court stated at page 201:

" 'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care.' (*Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, 583; *Hering v. Hilton*, 12 Ill. 2d 559, 562; *Klatt v. Commonwealth Edison Co.*, 33 Ill. 2d 481, 488.)"

Certain facts in the present case are undisputed: Daugherty, at the outset of the tumbling segment, gave the students oral instructions on the use of the horse; he personally instructed each student on his vaults; he reminded the students before each class to be careful when using the vaulting horse; Michael had performed approximately 30 successful vaults prior to the accident, including four or five vaults on the date of the occurrence; and there had been no previous accidents involving the equipment. Plaintiff contends that the disputed facts that spotters were not used during the vaulting horse exercises on the day of the occurrence and that Daugherty stated the vaulting horse was positioned too high created an issue of material fact and, therefore, that the issue of Daugherty's wilful and wanton misconduct should have been submitted to a jury.

■■ While the disputed facts might raise an issue as to whether Daugherty was guilty of negligence, it was incumbent upon plaintiff to plead and demonstrate facts leading to an inference of wilful and wanton misconduct. In *Gubbe v. Catholic Diocese of Rockford* (1970), 122 Ill. App. 2d 71, 257 N.E.2d 239, plaintiff, seeking to recover for injuries inflicted by a fellow student, alleged that defendants were guilty of wilful and wanton misconduct in providing inadequate supervision of the school playground and in failing to provide plaintiff with protection from his assailant even though plaintiff previously had requested such protection. The court held as a matter of law that the complaint stated insufficient facts to warrant an inference that defendants were guilty of wilful and wanton misconduct. In *Clay v. Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153, plaintiff's complaint was dismissed even though it was alleged that defendants knew or should have known of the violent propensities of the student who struck plaintiff without provocation. In the present case, assuming as we must the truth of the statements relating to the lack of spotters and the height of the horse, we cannot say that such evidence would support a determination that Daugherty was guilty of

wilful and wanton misconduct. Without sufficient factual proof, the characterization of the allegations of the complaint as "wilful and wanton misconduct" is insufficient to withstand a motion for summary judgment. See *Jarvis v. Herrin City Park District* (1972), 6 Ill. App. 3d 516, 285 N.E.2d 564.

Since defendant school board's liability rests on the theory of *respondeat superior*, an affirmance as to Daugherty is likewise applicable to it.

For the foregoing reasons, the order of the circuit court of Cook County granting defendants' motion for summary judgment is affirmed.

Order affirmed.

JIGANTI, P. J., and SIMON, J., concur.