KYLE THOMAS, Plaintiff-Appellant, *v.* CHICAGO BOARD OF EDUCATION *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 77-117

Opinion filed May 10, 1978.—Rehearing denied June 12, 1978.

SIMON, J., concurring in part and dissenting in part.

Liebling, Hauselman & Miller, Ltd., of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Robert A. Knuti and Hugh C. Griffin, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff appeals from an order of the trial court dismissing with prejudice count I of his amended complaint. Plaintiff charged in count I that he sustained injuries as a result of the negligence of defendants Chicago Board of Education and his three high school football coaches. Relying upon sections 24—24 and 34—84a of the School Code (Ill. Rev. Stat. 1975, ch. 122, pars. 24—24 and 34—84a) and on *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705, all defendants moved to dismiss the count. The individual defendants also relied upon the immunity conferred by Local Government and Governmental Employees Tort Immunity Act. Ill. Rev. Stat. 1975, ch. 85, par. 1—101 *et seq.*

Count I of the amended complaint alleged that on October 4, 1974, plaintiff was a duly enrolled student and a member of the varsity football team at Lakeview High School. It recited that the Board sponsored and conducted an athletic program which included football competition and that the individual defendants were football coaches at Lakeview. As part of the program, which was voluntary and was conducted after regular school hours, defendants provided the team members with football equipment including helmets and face masks.

Plaintiff was injured on October 4, 1974, during a varsity football game with another high school. The game took place at Hanson Park Stadium, a facility which plaintiff alleged was owned and operated by the Board. Plaintiff charged that defendants failed to warn him that participation in varsity football games could and did result in serious injuries to members of the team trained and equipped in a manner similar to plaintiff. He also alleged that the coaches had not been educated and trained properly and that the training program and practice facilities provided to team members were inadequate. With respect to the equipment, the complaint recited that plaintiff's helmet, face mask, padding and clothing were "improperly designed, obsolete, worn, defective or dangerous" and that the equipment had not been inspected and tested properly prior to the injury. Plaintiff finally alleged that he was required to play on a synthetic turf which was constructed, installed and maintained improperly.

■■ Sections 24—24 and 34—84a of the School Code are virtually identical in language and purpose. Section 24—24 provides:

"Teachers and other certified educational employees shall maintain discipline in the schools, including school grounds which are leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be

exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." (Ill. Rev. Stat. 1975, ch. 122, par. 24—24.)

This section confers *in loco parentis* status upon educational employees in matters relating to discipline and supervision of school activities. *Kobylanski* held that the intent of this section was to subject teachers and other certified educational employees to no greater liability to their students than parents who are liable to their children for wilful and wanton misconduct, but not for mere negligence.

As to those allegations of the complaint charging defendants with negligence in providing plaintiff with defective football equipment and clothing, the recent case of *Gerrity v. Beatty* (1977), 71 Ill. 2d 47, bears directly on the sufficiency of these allegations. There, plaintiff suffered injuries while making a tackle in a junior varsity football game. Plaintiff appealed the dismissal of that count of his complaint which alleged ordinary negligence on the part of the defendant school district in furnishing him with an ill-fitting and inadequate football helmet.

In reversing the trial court's decision, our supreme court noted a distinction between allegations of negligence in the direct student-teacher relationship and allegations of negligence in furnishing defective or inadequate equipment. The policy considerations which prompted the decision in *Kobylanski* concerned the need for teachers and other certified educational employees to have disciplinary and supervisory authority over their students similar to that which exists between parent and child. The School Code reflects a legislative determination that the orderly conduct of schools would be jeopardized seriously if teachers and school districts were amenable to ordinary negligence actions for accidents occurring during the exercise of such authority. In contrast, the furnishing of equipment for athletic teams was considered by the court to be a separate and distinct function of the school district. In holding that the complaint stated a cause of action for negligence, the court stated:

> "[P]ublic policy considerations argue rather strongly against any interpretation which would relax a school district's obligation to insure that equipment provided for students in connection with activities of this type is fit for the purpose. To hold school districts to the duty of ordinary care in such matters would not be unduly burdensome, nor does it appear to us to be inconsistent with the intended purposes of sections 24—24 and 34—84a of the School Code." 71 Ill. 2d 47, 52-53.

■■ In *Gerrity* plaintiff named only the school district as defendant. Consequently, the court necessarily was limited in its discussion of those parties to whom liability would attach. We believe, however, the *Gerrity* rationale supports the imposition of liability upon the individual

defendants in the present case. As football coaches, defendants have a duty to inspect the equipment which is provided to members of the team. When the defect that gives rise to an injury is not discovered due to lack of inspection and testing, liability for ordinary negligence should be imposed upon those whose responsibility it was to inspect and test. Plaintiff's complaint thus stated a cause of action against the individual defendants for the negligent furnishing of defective or obsolete equipment.

■■ Although the court in *Gerrity* did not discuss the applicability of the Tort Immunity Act, we do not believe a consideration of its provisions would have affected the outcome of the case. As in the School Code, the provisions of the Tort Immunity Act absolving local public entities and public employees from liability for negligence relate to their discretionary functions. We believe the distinction articulated by the court in *Gerrity* in the context of the School Code likewise is applicable to the Tort Immunity Act: the furnishing of equipment to athletic teams is a function separate and apart from the exercise of discretionary authority. Just as the School Code does not require that teachers and school districts be immunized from liability for negligence in this respect, neither does the Tort Immunity Act mandate that we absolve defendants, as a matter of law, from liability for the negligent furnishing of defective or obsolete equipment.

■■ ■ In contrast, we believe the paragraph of plaintiff's complaint alleging that he was required to play on a synthetic turf field which was improperly constructed, installed and maintained does not state a cause of action under *Gerrity*. Although the substance of the allegation relates to the condition of the playing surface, and thus may fall under the *Gerrity* reasoning, the paragraph is prefaced with language which charges defendants with negligence in their supervisory capacities. Both the School Code and the Tort Immunity Act require allegations and proof of wilful and wanton misconduct before defendants can be held liable for injuries arising out of the exercise of their discretionary or supervisory authority. Moreover, even if the complaint were amended to charge negligence in the installation and maintenance of the playing surface, section 3—106 of the Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, sec. 3—106) specifically absolves defendants of liability for injuries arising out of a defective condition in any public park unless they are guilty of wilful and wanton misconduct which proximately causes such injuries. This paragraph failed to charge any wilful and wanton misconduct on the part of defendants and it was properly dismissed.

■■■ In his complaint plaintiff also charged the Board with negligence in providing coaches who were not properly educated and trained. We do not believe the charge states a cause of action under *Gerrity*. There is a

material difference between the Board's function of furnishing athletic equipment and its function of hiring and training educational employees. To hold a school district or board liable for negligence in hiring and training educational employees would render it a guarantor of the expertise and effectiveness of all coaches and teachers. The risk of harm posed by inadequately trained teachers and coaches does not mandate the imposition of such a burden upon a school district or board. Moreover, such a holding would make substantial and unwarranted inroads upon the holding of *Kobylanski*. The employment and training of teachers and coaches is a discretionary activity. Therefore, under *Kobylanski*, plaintiff would have to allege and prove that the Board was guilty of wilful and wanton misconduct in the hiring and training of the individual defendants in the present case. The trial court's dismissal of this charge in plaintiff's complaint was correct.

Since we are remanding the cause pursuant to *Gerrity*, we must comment on those paragraphs of count I charging defendants with negligence in the supervision and training of the school football team. Plaintiff maintains that the *Kobylanski* doctrine should not extend to the individual defendants since football coaches do not fall within the definition of "teachers and other certified educational employees." He further argues that if coaches are considered teachers, their immunity from liability for negligence should not extend to a noncredit, extracurricular activity conducted after school hours and away from the school premises.

■■ We believe that the individual defendants are entitled to the immunity conferred by section 24—24 of the School Code. For purposes of determining the scope of the immunity granted, we perceive no difference in kind between the function performed by a gym instructor or a basketball coach and that performed by a football coach. This court has afforded immunity from liability for negligent supervision to both the former. (*Montague v. School Board* (1978), 57 Ill. App. 3d 828, 373 N.E.2d 719; *Fustin v. Board of Education* (1968), 101 Ill. App. 2d 113, 242 N.E.2d 308.) We therefore see no reason why the immunity should not extend to football coaches employed by a school board.

Plaintiff also argues that immunity should not be afforded because the football game was not part of the regular educational program. It was a noncredit, extracurricular activity conducted after school hours away from the school premises. Plaintiff maintains that these factors distinguish this matter from *Kobylanski*, especially in light of an amendment to sections 24—24, 34—84a, effective subsequent to the date of plaintiff's injury. Prior to the amendment, the language "including school grounds which are owned or leased by the board and used for school purposes and activities" was not included in either section. Plaintiff argues that the

purpose of the amendment was to extend the immunity to situations such as the present case and that since this language was not found in those sections as of the date of plaintiff's injury, no immunity should be afforded defendants.

■■ We do not agree with plaintiff's interpretation of the amendment. The amendment was not prompted by a desire to extend the geographical scope of the immunity granted, but was intended to clarify the fact that immunity was not confined to strictly educational activities. A teacher has been held not to be liable for negligence in the supervision of the playground activities, even though at the time the teacher was not performing an educational function in a classroom setting. (*Gubbe v. Catholic Diocese* (1970), 122 Ill. App. 2d 71, 257 N.E.2d 239.) Indeed, prior to the amendment, the immunity was accorded a teacher supervising a field trip to a museum. (*Mancha v. Field Museum of Natural History* (1972), 5 Ill. App. 3d 699, 283 N.E.2d 899.) It is evident that it is the function performed by the teacher at the time of the occurrence which determines the applicability of the immunity and not the geographical location of the accident. The determination of when liability will attach for negligent supervision does not depend upon whether the teacher is employed by a school which has sports facilities located on school grounds or by a school which must conduct its athletic program away from the premises.

■■ We also believe that the varsity football program falls within the definition of "activities connected with the school program." Although participation in the program is voluntary and not for credit, it does not follow that the program itself is unconnected with the school curriculum. Varsity athletics are an integral part of virtually all school programs at every level. We find that the football program does fall within the above-quoted language and that those educational employees supervising this activity are entitled to *in loco parentis* status. See *Gerrity v. Beatty.*

The allegations of count I of plaintiff's amended complaint as against the defendant Chicago Board of Education relating to the furnishing of defective or obsolete equipment and clothing fall squarely within the *Gerrity* holding. We find that, as to the same allegation, the *Gerrity* rationale is applicable to the individual defendants. We therefore reverse the trial court's order of dismissal.

For the reasons stated, the order of the circuit court of Cook County dismissing count I is reversed, and the cause is remanded for further proceedings consistent with the holding of this opinion.

Reversed and remanded.

JIGANTI, P. J., concurs.

Mr. JUSTICE SIMON, concurring in part and dissenting in part:

I agree with the conclusions of the majority except for its determination that the allegation that the defendants were negligent in requiring the plaintiff to play on a synthetic turf which was improperly constructed, installed or maintained did not state a cause of action.

The plaintiff's allegations that he was furnished improperly designed protective clothing and his allegations with respect to the condition of the synthetic turf are prefaced by identical language. The specific allegation concerning the equipment is that the defendants:

"Provided to the plaintiff and required the plaintiff to use improperly designed, obsolete, worn, defective or dangerous football helmet, face-mask, padding, football clothing and other equipment."

Similarly, the allegation concerning the artificial turf reads that the defendants:

"Required the plaintiff to play in the aforesaid varsity football game on October 4, 1974, on a synthetic turf field which was improperly constructed, installed and maintained."

I believe both of these allegations state the defendants failed to provide safe conditions under which to play. The faulty equipment furnished in the one case was the protective clothing with which the student played; in the other, it was the unsafe field on which he played. Since the defendants' alleged negligence in failing to inspect and test the clothing and equipment furnished gives rise to a cause of action as stated by *Gerrity* and the majority here, the defendants should be equally responsible when the defect that gives rise to injury results from the defendants' failure to inspect and test the playing field surface. A playing field is just as much a part of the equipment used by a football team as is a helmet, especially as far as its potential for causing injury and the need for proper inspection of it is concerned.

Also, I disagree with the majority's reading of section 3—106 of the Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 3—106), a reading which bars the action the plaintiff alleges with respect to the synthetic turf at Hanson Stadium. I interpret the statute on which the majority relies as applicable to parks, playgrounds and open areas used for recreational purposes, which are generally open for use and enjoyment by the general public. I see no justification for extending it to cover a stadium such as Hanson Stadium, which is utilized by the Board of Education primarily or exclusively for competitive athletic team events at which entry is restricted to those who pay admission fees. There is nothing in the record which indicates that Hanson Stadium was a park, playground or open area available for use and enjoyment by the public in general except for

the opportunity to be spectators at athletic events when an admission fee was paid.

Thus, I would reverse and remand for the additional reason that the allegations of the plaintiff's amended complaint that defendants were negligent in providing the plaintiff with an improperly constructed, installed and maintained playing surface is also approved by the *Gerrity* reasoning.