BETTY JACKSON, a Minor, by her Next Best Friend, Barbara Jackson, Plaintiff-Appellant, v. CHICAGO BOARD OF EDUCATION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—88—3029

Opinion filed December 29, 1989.

Stephen M. Passen, Ltd., of Chicago (Stephen M. Passen and Jay Paul Deratany, of counsel), for appellant.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy Jo Arnold, of counsel), for appellees Chicago Board of Education and Bertha Easterling.

Witwer, Burlage, Poltrock & Giampietro, of Chicago (Wayne B. Giampietro and James B. Dykehouse, of counsel), for appellee Ruby L. Rhodes.

No brief filed for other appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Betty Jackson (plaintiff) brought an action in the circuit court of Cook County against defendants Chicago Board of Education (the Board), Ruby L. Rhodes, Bertha Easterling, and Keith Washington for personal injury she sustained in an educably mentally handicapped (EMH) classroom in February 1982, when she was struck by a chalkboard clip thrown by defendant Washington. The circuit court granted summary judgment in favor of defendants Rhodes, the Board and Easterling. Plaintiff appeals from this judgment, contending that the circuit court erred in applying a willful and wanton misconduct standard to her case and, alternatively, that the court improperly granted summary judgment under the willful and wanton standard. We affirm.

The following deposition testimony was presented to the circuit court on the summary judgment motion. Rhodes testified that on February 24, 1982, she taught 14 children, ages ranging from 12 to 15 years, in an EMH class at Bryn Mawr Elementary School in Chicago, Illinois. On her 20-minute scheduled break that day, she left the classroom at 1:12 p.m. to be attended by Easterling, a teacher's aide who

simultaneously supervised a "regular" second-grade class during this recess period. Rhodes returned to the classroom by 1:32 p.m.

Easterling testified that during the recess period, as part of her regular duties, she went back and forth between the EMH classroom and the regular second-grade classroom, leaving each class unattended for a minute at a time. While she monitored the "regular" second-grade classroom, she heard yelling in the EMH classroom. She then returned to the EMH classroom.

Plaintiff testified that Easterling did not enter the room during the recess break. The children in the classroom were acting "wild," sitting on the desks, standing at the back of the room, and play-fighting. While she was in the back of the room, someone called her name. When she turned around, she was hit in the eye by a chalkboard clip.

Washington testified that Rhodes was gone a short time when he began tossing a "paper clip" in the air and catching it. He mistakenly threw the clip backwards over his shoulder. He was not aware that it hit plaintiff until he heard her holler. He further testified that 20 minutes elapsed from the time of the accident until Rhodes returned, and no adult was present during the recess period.

Donnell Jackson, another student in the EMH class, testified that Rhodes had been gone approximately one-half hour before the accident occurred. He observed a teacher's aide appear in the doorway one time during Rhodes' absence, but he did not know if the aide was present at other times.

Plaintiff testified that Washington had never hurt her before, and "he wasn't that type of person." He was a "wild" person, meaning that he played with the other boys, was macho, and was like any other boy. He was not a bully or a troublemaker. Rhodes similarly testified that Washington was a well-mannered boy with no previous behavioral problems, and Easterling stated she had no knowledge of any behavioral problems with Washington and had never noticed any prior unusual conduct in the EMH class.

Rozanne Deutsch, the school psychologist, testified that children are placed in an EMH class because of low "IQ" and that children with behavioral disorders are placed in a separate class for behavioral disorders. Washington was a 15-year-old boy functioning at a first- or second-grade level. None of Washington's school records indicated any behavior disorder or prior aggressive behavior.

Plaintiff introduced an affidavit of Dr. Patricia Shafer, a psychologist, wherein Shafer stated her opinion that a mentally handicapped 15-year-old child, functioning educationally at a seven-year-old child's level, without the presence of an authority figure is "more likely to

act on his immediate impulses resulting in unintended consequences."
She further stated her belief that "a class of mentally handicapped
children, functioning at the mental age of 7 or 8, should not be left
unattended for any period of time."

In granting summary judgment in favor of defendants, the
circuit court applied the willful and wanton standard as set forth in
*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347
N.E.2d 705. In *Kobylanski*, our supreme court interpreted the Illinois
School Code (School Code) (Ill. Rev. Stat. 1987, ch. 122, pars. 24—24,
34—84a) as conferring upon teachers and other certificated educa-
tional employees in disciplinary and nondisciplinary supervisional mat-
ters the status of *in loco parentis*, thereby extending to them the pa-
rental immunity from ordinary negligent conduct and requiring proof
of willful and wanton misconduct as a prerequisite to imposition of lia-
bility.

On appeal, plaintiff initially contends that the circuit court
erred in applying a willful and wanton misconduct standard rather
than an ordinary negligence standard to her case. Defendants Easter-
ling and the Board object to our consideration of this issue on the
ground that plaintiff's pleadings allege only willful and wanton mis-
conduct and not ordinary negligent conduct. The only issue properly
preserved for appeal, they argue, is whether the circuit court cor-
rectly granted summary judgment based upon the proof relating to
the alleged willful and wanton misconduct. Because we have discre-
tionary authority under Supreme Court Rule 366(a)(1) (107 Ill. 2d R.
366(a)(1)) to "exercise all or any of the powers of amendment of the
circuit court" on just terms and because no prejudice will result to
defendants since the issue was repeatedly argued in the circuit court,
we will consider plaintiff's contention.

Plaintiff first argues that Illinois case law and legislative pro-
visions demonstrate that the limited immunity afforded teachers by
the School Code is not applicable to an EMH classroom setting. We
disagree.

To support her contention, plaintiff cites a line of cases subse-
quent to *Kobylanski* which have found the School Code immunity in-
applicable in certain contexts. In the first of these cases, *Gerrity v.
Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323, the Illinois Supreme
Court expounded on the scope of the School Code immunity. The
court stated that the immunity extends only to matters arising out of
the "teacher-student relationship in matters relating to the teacher's
personal supervision and control of the conduct or physical movement
of a student." (71 Ill. 2d at 52, 373 N.E.2d at 1326.) It explained that

the statutorily granted immunity reflects a legislative determination that an orderly and conducive learning atmosphere requires between teacher and student the same disciplinary and supervisory authority as exists between parent and child and that this relationship would be seriously jeopardized if teachers and school districts were amenable to ordinary negligence actions for accidents occurring in the course of the exercise of such authority. Applying this reasoning to the case before it, the supreme court concluded that the School Code immunity did not apply where the alleged negligence was in connection with the school's furnishing a defective football helmet to students because the conduct involved a function separate from the above teacher-student relationship and policy considerations. *Gerrity*, 71 Ill. 2d at 51-52, 373 N.E.2d at 1324-26.

The other cases plaintiff cites similarly involve school functions of the schools separate from the discipline and supervision associated with the teacher-student relationship. In *O'Brien v. Township High School District 214* (1979), 73 Ill. App. 3d 618, 392 N.E.2d 615, *rev'd on other grounds* (1980), 83 Ill. 2d 462, a student alleged that he suffered personal injuries when the defendants provided him medical treatment. The primary allegation in *Nielsen v. Community Unit School District No. 3* (1980), 90 Ill. App. 3d 243, 412 N.E.2d 1177, where a student was injured when a container exploded during a physics experiment, was that the school should have known that the container was a defective and dangerous instrumentality. In *Griffis v. Board of Education, District 122, Oak Lawn* (1979), 72 Ill. App. 3d 784, 391 N.E.2d 451, a mentally handicapped student, who was injured while working in the school's faculty lounge, alleged that the school was negligent in allowing teachers to smoke and leave cigarettes burning in close proximity to a flammable liquid.

As the *Gerrity* line of cases focus on the school's function in determining the immunity under the School Code, the cases do not suggest a distinction based upon the type of students or classroom involved. Thus, similar to the holdings in numerous other appellate court cases involving the improper supervision of students, we find *Kobylanski* controlling. See *Gammon v. Edwardsville Community Unit School District No. 7* (1980), 82 Ill. App. 3d 586, 403 N.E.2d 43; *Cipolla v. Bloom Township High School District No. 206* (1979), 69 Ill. App. 3d 434, 388 N.E.2d 31; *Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153; *Mancha v. Field Museum of Natural History* (1972), 5 Ill. App. 3d 699, 283 N.E.2d 899.

■ Plaintiff next argues that the School Code immunity is inapplicable to Easterling's conduct since she is not a teacher or certifi-

cated employee. Easterling is not an individual who falls within the class of persons entitled to immunity from suit for ordinary negligence under the School Code because she is not a teacher performing the function of classroom instruction. (See *Edmonson v. Chicago Board of Education* (1978), 62 Ill. App. 3d 211, 379 N.E.2d 27.) Defendants Easterling and the Board correctly point out, however, that they are protected from any ordinary negligent conduct by Easterling under the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*). Section 3—108 of this act provides:

> "[N]either a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." (Ill. Rev. Stat. 1987, ch. 85, par. 3—108.)

Notwithstanding this statutory immunity, plaintiff urges that we find defendants have waived this defense by failing to raise it in the circuit court.

The rule that a defense not raised in the trial court is regarded as waived and may not be raised for the first time in a reviewing court is a rule only insofar as an appellant is concerned; an appellee may urge any point in support of judgment on appeal, so long as a factual basis for such point was before the trial court. (*Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 246 N.E.2d 285.) Because a clear factual basis exists to support a rejection of the ordinary negligence standard based upon the Tort Immunity Act, the circuit court's application of the willful and wanton misconduct standard as to Easterling and the Board is sustained on this ground.

In her final argument that the circuit court erred in applying a willful and wanton misconduct standard, plaintiff posits another theory of negligence, namely, that the Board was directly negligent in assigning or entrusting an EMH classroom to a noncertified teacher or to a person not under the direct supervision of a certified teacher in violation of statutory and administrative regulations. Under this negligence theory, she argues that the Board's actions would not fall under the supervisional activities which are granted immunity under the School Code and the Tort Immunity Act. The Board objects to our consideration of this issue because it is a theory not presented by plaintiff in the circuit court. See *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 473 N.E.2d 588.

The record demonstrates that the theory before the circuit court was that the Board was liable for the conduct of its teacher and teacher's aide in not properly supervising the EMH classroom. The

pleadings do not even remotely suggest a negligence theory based upon the Board's assigning an unqualified person to an EMH classroom. While plaintiff argues that she adequately raised the theory in the circuit court, she refers to only one paragraph in her written response to defendant's summary judgment motion in which she states "[c]learly a jury could properly find the Board liable for violating their statutory duty to provide a properly trained professional to supervise mentally handicapped children." This paragraph is enveloped in her lengthy argument as to her pleaded theory of misconduct. Defendants did not have an adequate opportunity to defend against this theory in the circuit court. Under these circumstances, we find that this theory of negligence is not properly before us.

■ We turn now to plaintiff's alternative contention that the circuit court erred in granting summary judgment to defendants under the willful and wanton misconduct standard. To establish that a person's conduct has been willful and wanton, a plaintiff must show that the act was "committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by ordinary care." (*Lynch v. Board of Education of Collinsville Community Unit School District No. 10* (1980), 82 Ill. 2d 415, 429, 412 N.E.2d 447, 457; *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293, 300.) Defendants argue that even accepting the disputed fact that the EMH students were left without any supervision during the 20- or 30-minute recess period, Illinois case law demonstrates that plaintiff did not present sufficient evidence to create a factual question as to whether defendants had the requisite knowledge to meet the above standard.

■ Illinois courts have consistently held that a teacher's mere act of leaving children unsupervised will not be sufficient to establish willful and wanton misconduct. (*Mancha*, 5 Ill. App. 3d 699, 283 N.E.2d 899; *Cipolla*, 69 Ill. App. 3d 434, 388 N.E.2d 31; *Pomrehn v. Crete-Monee High School District* (1981), 101 Ill. App. 3d 331, 427 N.E.2d 1387.) Rather, a plaintiff must show that the teacher or school was aware or should have known that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm. (*Pomrehn*, 101 Ill. App. 3d at 335, 427 N.E.2d at 1390; *Mancha*, 5 Ill. App. 3d at 703, 283 N.E.2d at 903.) A plaintiff's general allegation that a teacher or school should have known the harm would occur without adult supervision is insufficient to satisfy this standard. See *Holsapple v. Case Community Unit School District C-1* (1987), 157 Ill.

App. 3d 391, 510 N.E.2d 499.

The specific allegations necessary to raise a jury question as to whether a teacher or school's lack of supervision is willful and wanton is best illustrated by the following cases. In *Gammon v. Edwardsville Community Unit School District No. 7* (1980), 82 Ill. App. 3d 586, 403 N.E.2d 43, where a student was injured when a classmate struck him in the eye, a jury question was raised by the fact that the guidance counselor was previously warned of the student's threats to plaintiff's safety but failed to supervise the students. In *Hadley v. Witt Unit School District 66* (1984), 123 Ill. App. 3d 19, 462 N.E.2d 877, summary judgment was improperly granted where the plaintiff had alleged that the teacher left students unattended without directing them to wear goggles during a dangerous experiment involving the hammering of metal.

■■ The record here discloses no evidence of any knowledge by the school or its employees as to prior behavioral problems with Keith Washington. To the contrary, Rhodes testified that Washington was well-mannered and had never given her problems before. The school psychologist stated that Washington's school records gave no indication of behavioral disorders or problems with aggressive behavior. Finally, plaintiff testified that Washington was not a troublemaker.

The evidence is also insufficient to create a factual question as to whether defendants should have known of a high probability of impending danger because the children were EMH students. No evidence was presented that this particular EMH class contained children with behavioral problems or that EMH students by their nature have behavioral disorders. The school psychologist testified that children are placed in the EMH program for academic deficiencies, not behavioral problems. Plaintiff presented only a psychologist's statement that a mentally handicapped child of age 15, functioning at a seven-year-old level, is "more likely to act on his immediate impulses, resulting in unintended consequences." Such a generalized assertion is insufficient under Illinois case law to create a factual question as to whether defendants' conduct in leaving the EMH class unattended for a 20- or 30-minute recess period was willful and wanton misconduct.

Accordingly, we affirm the circuit court's order entering summary judgment in favor of defendants Rhodes, the Board and Easterling.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.