KACEY L. STIFF, by her Mother and Next Friend, Deana S. Stiff, *et al.*, Plaintiffs-Appellees, v. EASTERN ILLINOIS AREA OF SPECIAL EDU-CATION *et al.*, Defendants-Appellants.

Fourth District   No. 4—93—0317

Argued August 19, 1993.—Opinion filed September 9, 1993.—Modified on denial of rehearing October 20, 1993.

John P. Ewart (argued) and Jonathan L. Kazense, both of Craig & Craig, of Mattoon, for appellants.

James R. Glenn (argued), of Glenn & Logue, of Mattoon, for appellees.

JUSTICE LUND delivered the opinion of the court:

Defendants bring this interlocutory appeal of an order of the circuit court of Coles County denying their motion to dismiss all counts of the complaint. Kacey Stiff was a handicapped student attending the Eastern Illinois Area of Special Education (EIASE) when she, along with six other students, was taken on a field trip to Fox Ridge State Park on October 30, 1990. Kacey sustained injuries resulting from a fall from a foot bridge. The complaint alleges that the EIASE teachers' failure to properly supervise the activities of the students was negligent and constituted wilful and wanton conduct. The trial court denied the motion to dismiss on grounds that the accident did not occur on property owned by defendant local governmental entity. We affirm and remand.

On appeal, defendants argue section 3—108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1991, ch. 85, par. 3—108(a)) bars claims for both negligence and wilful and wanton conduct. Alternatively, defendants argue section 24—24 of the School Code (Code) (Ill. Rev. Stat. 1991, ch. 122,

par. 24—24) confers immunity upon teachers from suits for negligence arising from activities connected with the school program.

■ Section 3—108(a) of the Act provides that no local public entity or public employee is liable for an injury caused by a failure to supervise an activity on, or the use of, any public property. (Ill. Rev. Stat. 1991, ch. 85, par. 3—108(a).) The Act defines "public property" to mean real or personal property owned or leased by a local public entity. (Ill. Rev. Stat. 1991, ch. 85, par. 3—101.) The Act further specifies that "[l]ocal public entity" does *not* include "the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State." (Ill. Rev. Stat. 1991, ch. 85, par. 1—206.) Kacey's injuries occurred at Fox Ridge State Park, operated under the jurisdiction of the Illinois Department of Conservation. A strict reading of the Act requires the conclusion that section 3—108(a) cannot confer immunity upon a public employee for injuries sustained as a result of a failure to supervise an activity on property owned by the State.

■ In response, defendants contend that State-owned property should be considered "public property" under the Act. They argue the State has no need or incentive to provide a separate form of immunity as to its "property," because it has a broader form of general immunity through the State Lawsuit Immunity Act, which states:

"Except as provided in the 'Illinois Public Labor Relations Act', enacted by the 83rd General Assembly, or except as provided in 'AN ACT to create the Court of Claims, to prescribe its powers and duties, and to repeal AN ACT herein named', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court." (Ill. Rev. Stat. 1991, ch. 127, par. 801.)

This statute, defendants conclude, indicates that the legislature has never made any effort to provide a limited form of immunity for State-owned property. We find the argument unpersuasive and lacking full explanation.

Secondly, defendants contend that even if the accident did not occur on "public property" under the terms of the Act, the school district conducting the field trip represents a "local public entity" and its use of the State park is no different than use of recreational facilities owned by the local public entity. We agree that the plain language of section 3—108(a) of the Act gives no indication the legislature contemplated a difference between property owned by the State and property owned by local public entities. However, we cannot ignore the plain language of the Act in defining its terms. The trial court

properly denied the motion to dismiss under section 3—108(a) of the Act.

■ Next, defendants contend that section 24—24 of the Code bars the negligence claims in plaintiffs' complaint. Section 24—24 provides:

"Teachers and other certificated educational employees shall maintain discipline in the schools, *including school grounds which are owned or leased by the board and used for school purposes and activities*. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend *to all activities connected with the school program, including all athletic and extracurricular programs*, and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 122, par. 24—24.

In *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705, the supreme court held that this section confers upon educators the status of parent or guardian in relation to the students. Prior to the supreme court decision in *Cates v. Cates* (1993), 156 Ill. 2d 76, it was generally agreed in Illinois that a parent was not liable for injury to his or her child absent wilful and wanton misconduct, and educators standing *in loco parentis* were immune from suits alleging ordinary negligence. (*Kobylanski*, 63 Ill. 2d at 172-73, 347 N.E.2d at 709.) *Cates* changes the picture by holding that there can be recovery against a parent for negligence, except "conduct inherent to the parent-child relationship; such conduct constitutes an exercise of parental authority and supervision over the child or an exercise of discretion in the provision of care to the child." (*Cates*, 156 Ill. 2d at 104-05.) The *Cates* opinion also states:

"The standard we have thus developed focuses primarily on conduct inherent to the parent-child relationship, which conduct we describe by approximating the *Gollar*[ v. White (1963), 20 Wis. 2d 402, 122 N.W.2d 193,] standard without its enumerated duties. Such a standard is consistent with other jurisdictions which have abrogated the immunity in order to achieve greater clarity in the area of parent-child negligence. The standard we have created is not, however, as extreme because we do not fully abrogate the immunity, but rely on an exception. Our standard also allows a broader area of negligent conduct to remain immunized. Thus, under our standard, parental discretion

in the provision of care includes maintenance of the family home, medical treatment, and supervision of the child. A child may attempt to sue a parent alleging that the child fell on a wet, freshly mopped floor in the home, but the immunity would bar such an action because the parent was exercising his discretion in providing and maintaining housing for the child." *Cates*, 156 Ill. 2d at 105.

The important test is not for " 'family purposes' ***, but whether the alleged conduct concerns parental discretion in discipline, supervision and care of the child." (*Cates*, 156 Ill. 2d at 104.) *Cates* held that a father was not immune where the negligence involved the operation of a motor vehicle.

We find the *Cates* opinion requires a finding that teachers "stand-[ing] in the relation of parents and guardians" (Ill. Rev. Stat. 1991, ch. 122, par. 24—24) can also be subjected to negligence claims, except where the conduct constitutes the exercise of teacher authority and supervision over the child, or in the exercise of discretion in the provision of care to the child. We find it is consistent with the *Cates* opinion to hold that teacher discretion, which is immune, includes maintenance of the classroom, medical treatment necessarily decided by the teacher, and supervision of the child in the school on the playground and on authorized school outings.

■ In 1975, the statute was amended, adding the language "including school grounds *** used for school purposes and activities." (Ill. Rev. Stat. 1991, ch. 122, par. 24—24.) Plaintiffs contend the purpose of this amendment was to make the scope of the Code immunity consistent with the scope of immunities afforded under the Act. As such, plaintiffs contend the legislature restricted the application of section 24—24 of the Code to activities occurring on school grounds owned or leased by the school board. Since the injuries in the case at hand occurred off school grounds, plaintiffs argue section 24—24 of the Code is inapplicable. We disagree.

We read nothing in section 24—24 of the Code limiting its application to school grounds. The language "including school grounds" is intended to make clear that school grounds, *as well as* the classroom, are covered. The reasoning behind this interpretation is made clear in subsequent language of the paragraph extending the scope to *all* activities connected to school programs. The programs include athletic and extracurricular outings, many of which necessarily take place on property not owned by the school district. Field trips to State parks which expand children's knowledge of nature, visits to local manufacturing facilities or utilities such as electrical generating plants, and

opportunities to see State government in operation are all activities recognized as beneficial to the education of children. Any other interpretation of the statute would discourage teachers in providing the best educational opportunities for their students.

Plaintiffs contend the 1975 amendment, adding the language "including school grounds *** used for school purposes and activities," was the legislature's direct response to *Mancha v. Field Museum of Natural History* (1972), 5 Ill. App. 3d 699, 703, 283 N.E.2d 899, 903, where the First District Appellate Court found section 24—24 of the Code applicable to a teacher's alleged negligence that occurred during a field trip to the museum. Although the *Mancha* decision never directly addresses the issue of a teacher's liability for student injuries occurring on private property, the court found no obstacle in applying section 24—24 of the Code. Plaintiffs offer no support for their assertion that the *Mancha* decision influenced the legislature in any way. On the contrary, the supreme court in *Kobylanski* remarked that since the legislature offered no further explanation of its intent in regard to the scope of section 24—24 of the Code, it can be assumed that it agreed with the interpretation of the appellate court decisions. (*Kobylanski*, 63 Ill. 2d at 172, 347 N.E.2d at 709.) *Mancha* was included in this reference to the appellate court decisions.

Our interpretation of section 24—24 of the Code is consistent with a prior decision of this court in *Morrison v. Community Unit School District No. 1* (1976), 44 Ill. App. 3d 315, 358 N.E.2d 389, where section 24—24 of the Code was applied to a cause of action resulting from a student's injuries sustained while swimming during a school outing to a private club. Even so, the court did not discuss the issue of activities held on private property. The only case to directly address the issue of whether section 24—24 of the Code applies to school activities held on private property is *Thomas v. Chicago Board of Education* (1978), 60 Ill. App. 3d 729, 736, 377 N.E.2d 55, 59, *rev'd on other grounds* (1979), 77 Ill. 2d 165, 395 N.E.2d 538, where the First District Appellate Court stated: "It is evident that it is the function performed by the teacher at the time of the occurrence which determines the applicability of the immunity and not the geographical location of the accident." We fully agree with the *Thomas* decision in holding section 24—24 of the Code applicable to school activities held on private property. To accept plaintiff's interpretation of the statute would certainly eliminate a variety of extracurricular activities in our schools.

■ We recognize the *Cates* decision changes the law as previously understood by those practicing law in Illinois courts. Because of this

change, on return of this case to the trial court, the sufficiency of the pleadings, possibly after amendment, can be determined on the issue of negligence. We affirm the trial court's denial of the motion to dismiss.

Affirmed and remanded.

STEIGMANN, P.J., and COOK, J., concur.