(No. 76-CC-2279–)

KATHLEEN MARTENS, Claimant, *v.* THE BOARD OF TRUSTEES OF
SOUTHERN ILLINOIS UNIVERSITY, Respondent.

*Opinion filed October 29, 1981.*

CHARLES E. HAMILTON, for Claimant.

DONOVAN, HATCH & CONSTANCE (HAROLD A. DONO-
VAN, of counsel), for Respondent.

POCH, J.

On August 19, 1975, the Claimant, Kathleen Martens,
then age 20, and two friends attended a rock concert at
the Mississippi River Festival, a program of summer
entertainment held on the grounds of Southern Illinois
University at Edwardsville (SIU-E). Ushers, security
personnel and such services are provided by full- or part-
time employees of SIU-E. The three attended as ticket-
purchasing customers.

The River Festival is held in a natural amphitheatre.
There is a stage under a pavilion at the front of the

amphitheatre with chairs arranged for seating within the pavilion. Above this, on the slopes of the bowl that forms the amphitheatre, patrons sit on the grass in the open.

Claimant and her two companions arrived at the site at about 4:30 p.m.; the concert was scheduled to begin at 7:30 p.m. They initially picnicked outside the festival site and entered when the gates opened at 6:30 p.m. They took seats on the grassy hillside near and to one side of the pavilion. The SIU-E personnel at the gates checked their cooler and blankets for drugs and alcoholic beverages; no inquiry was made as to fireworks.

At about dusk fireworks began to be set off by various unknown persons in the crowd attending the concert. These consisted of firecrackers that merely explode and "bottle rockets", which shoot into the sky and produce vivid colors without sending any sort of hard projectile into the crowd. During this activity there were no public address requests that the fireworks cease, nor were there any signs or warnings in evidence anywhere prohibiting or referring in any way to fireworks. No witness was able to testify as to any action taken by SIU-E personnel in response to the fireworks, although Gary Gunter, chief of police for SIU-E (who was not present at the festival site on the date in question), testified that their policy was to confiscate any fireworks his men found in any patron's possession.

The crowd for this particular River Festival performance, Jefferson Starship, numbered about 20,000 persons, which was considered to be as large a crowd as would be expected to attend any River Festival event. Gunter testified that the number of SIU-E personnel on duty, both ushers and regular security people, for this night was between 200 and 250. He also testified that trouble is to be anticipated at a rock concert such as was

held that night because of the nature and size of the crowd.

Claimant testified she had been to rock concerts before this night at the River Festival and had witnessed fireworks at every one. However, she had never seen any that involved the firing of any projectiles into or over the crowd.

At about 8:15 p.m., a bright pink, large flare caught the attention of Paula Lehman, one of the Claimant's companions. It went up from the rear of the amphitheatre within the festival area and flew over where Claimant and her companions were seated. Miss Lehman testified that it reminded her of a signal flare, and she thought it would pass beyond them. Claimant's attention also was drawn to this bright flare, and she commented that "this is going to hit someone." The next thing either witness remembered was Claimant's being struck in the forehead by the flare's projectile.

This projectile, admitted into evidence, consists of a metal tubular body about eight inches long and 1½ inches in diameter. About three inches of the body was solid; the remainder, hollow. A collar with fin-like projections is attached to and slides along the solid end.

No witness could testify as to who set off this flare or whether any SIU-E personnel were in the area from which the flare was set-off.

Claimant was cut on her forehead just above the bridge of her nose. She was taken by ambulance to the emergency room of a local hospital, where the laceration was sutured. She subsequently lost three days from her employment, an income loss of $63.84. She incurred a bill of $100.00 from the emergency room physician, a bill

of $73.00 from the hospital and a bill of $47.00 from the ambulance.

Thereafter, Claimant was treated by Dr. Donald Buser, her local physician. He testified that he first saw her on September 10, 1975, for injuries resulting from the August 19 accident. His examination revealed a suture line above the nose and along the midline of the nose extending from the area above the inside of the left eye to the area above the inside of the right eye, three-fourths of an inch long. There was also a one-inch laceration along her nose. She was complaining of constant headaches. X-rays and an EEG were taken, both of which failed to disclose anything. He prescribed medication to relieve her headaches.

Dr. Buser saw Claimant for more time in the next nine months, during which time the frequency of her headaches had been reduced to once a month. Dr. Buser's bill for his treatment during this period was $73.00 and the EEG exam at the hospital cost $45.00.

Claimant testified that her eyes were swollen shut for three to four days following the accident and that she had bruises for about three weeks.

Claimant still has a noticeable half-moon shaped scar over the bridge of her nose plus a scar running vertically below it onto the bridge of her nose.

The possessor of land has a duty to use reasonable care to protect an invitee against a known, dangerous condition if it constitutes an unreasonable risk of harm to the invitee and if the possessor should expect that the invitee will not discover or realize the danger or will fail to protect himself against the danger. (*William v. Wiewel* (1976), 36 Ill. App. 3d 478, 344 N.E.2d 34.) It is undisputed

that Claimant was an invitee of Respondent. The issues to be determined are therefore: (1) Was the situation enough to constitute a "known, dangerous condition"? (2) Did Respondent have reason to believe that Claimant would not realize the danger or would fail to protect herself from the danger? and (3) Did Respondent use reasonable care to protect Claimant from the actions of third persons?

According to testimony, the launching of fireworks or projectiles was a common occurrence at concerts hosted by SIU-E. The legislature has seen a situation. (Ill. Rev. Stat., ch. 127½, par. 128). The legislation was specifically designed to protect human life and property. It evidences a clear legislative expression that lighted, exploding, and flying objects are dangerous to the public. Moreover, as more persons are exposed to such dangerous objects, the risk of injury is proportionately increased. The situation at the festival on August 19, 1975, was clearly dangerous; and since testimony indicates that occurrences of fireworks at rock concerts hosted by Respondent were the rule rather than the exception, Respondent should have been aware of the dangerous situation.

The second question, then, is whether Respondent should have expected that Claimant would not discover or realize the danger or would fail to protect herself against the danger. Testimony indicated that there were between 200 and 250 ushers and regular security people on duty the night of the incident. Claimant had every reason to believe that these people were there for her protection and would take necessary steps to eliminate any dangerous situation—especially a situation which was prohibited by State law. Respondent was the person

charged with enforcing this law, and it cannot transfer to Claimant the duty to protect herself any more than she did in such a large public gathering.

The final question is whether Respondent used reasonable care to protect Claimant from the actions of third persons. The rule of law regarding a landowner's duty to guard an invitee against the actions of a third person, whether negligent or criminal, is that the duty will not be extended to the owners unless there is knowledge or previous incidents or special circumstances which would charge the owners with knowledge of the danger and the duty to anticipate it. (*Mancha v. Field Museum of Natural History* (1972), 5 Ill. App. 3d 699, 283 N.E.2d 829.) It has already been determined that Respondent had knowledge of the danger, and testimony confirms that it did anticipate the danger. Gary Gunter, chief of police for SIU-E, testified that on a night such as the night in question trouble was always to be anticipated because of the nature and size of the crowd. Respondent therefore is charged with the use of reasonable care to protect Claimant from danger. Respondent failed in this respect. There is nothing in the record to show any action by Respondent other than a cursory search prior to entering the premises. Respondent presented no testimony that its employees took any steps to prevent the fireworks after they began being set off inside the premises. Because of the statutory prohibition, Respondent has an affirmative duty as a State agency to enforce the law or suffer the consequences of its inaction. The failure to even warn those violating the law after the fireworks began bespeaks to the violators at least tolerance of their actions by SIU-E. Such encourages rather than discourages the illegal and unsafe activity.

We believe an award of $10,000.00 for lost wages,

for pain and suffering, hospital, doctor and ambulance bills, and for permanent scars is a just and fair award.

Claimant is hereby awarded the sum of ten thousand dollars ($10,000.00).