Jane DOE I, and Father as next friend of Jane Doe II, a minor, Plaintiffs,

v.

BOARD OF EDUCATION OF CONSOLIDATED SCHOOL DISTRICT 230 COOK COUNTY, ILLINOIS, Arlene See, Daniel Romano, Patrick Vasquez, Charles Cummings, Lisa Otto, Cyndie Skroch and Dr. Timothy Brown, Defendants.

No. 96 C 3393.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1998.

Stephen H. DiNolfo, Ottosen Sinson Trevarthen & Britz, Ltd., Wheaton, IL, Patricia Mary Fennell, Joseph Patrick Berglund, Stanley E. Niew, Kathleen I. Niew, Niew & Associates, P.C., Oakbrook, IL, for Plaintiffs.

Jeremiah P. Connolly, Jon C. Papin, Kelly A. Giampa, Bollinger, Ruberry and Garvey, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Jane Doe I and Jane Doe II have brought a six count second amended complaint against defendants Board of Education of Consolidated School District 230 ("District") and Arlene See, Daniel Romano, Patrick Vasquez, Charles Cummings, Lisa Otto, Cyndie Skroch and Dr. Timothy Brown (jointly as the "individual defendants") in their individual capacities as Assistant Superintendent and Principal (See), Band Director (Romano), Choir and Winter Guard Instructor (Vasquez), Winter Guard and Marching Band Instructor (Cummings) and Teacher–Sponsor for Winter Guard and Marching Band (Otto and Skroch). The suit alleges that "while acting as [their] instructor, Vasquez engaged in sexual relations with plaintiffs who were minor students." Count I is brought against the individual defendants pursuant to 42 U.S.C. § 1983, alleging that the individual defendants violated plaintiffs' Fourteenth Amendment and substantive due process rights by "promulgating and main-

taining policies which foster sexual abuse of minor female high school students at Andrew High School by Vasquez...." Count II is against the District, again pursuant to § 1983, alleging that the District acquiesced in or ratified the activities of the individual defendants, resulting in policies, customs or practices which facilitated the sexual abuse of plaintiffs by Vasquez. Counts III and IV are state law claims against the District for negligent hiring and retention of Vasquez. Count V is a claim against Vasquez for assault and battery, and Count VI is against the individual defendants for violations of the Illinois School Code.

Plaintiffs have moved for partial summary judgment against the District on Counts II, III and IV and against Romano on Count I. The District has filed a cross-motion for summary judgments on Counts II, III IV and VI. The individual defendants have moved for summary judgment on all counts. For the reasons set forth below plaintiffs' motion is denied, and defendants' motions are granted in part and denied in part.

### Facts

While few of the underlying facts are undisputed, all of the parties to this lawsuit agree that Vasquez, who was an Instructor for the Andrew High School Winter Guard and Marching Band ("Winter Guard"), had a sexual relationship with two of his students during the 1994–95 school year. The first student, identified as Jane Doe I, was 16 in late April 1994 when the relationship began. That relationship ended June 3, 1995. Jane Doe I was a member of the Winter Guard throughout that time period. Jane Doe II was 15 in late October 1994 when her relationship with Vasquez began. That relationship ended in February 1996. Jane Doe II was also a member of the Winter Guard throughout that period. (Jane Doe I and Jane Doe II will be referred to herein as "plaintiffs".)

Vasquez was originally hired as an Instructor for Winter Guard in 1985. He was approximately 20 years old at that time. He continued in that position until 1990. He took the 1990 season off, according to plaintiffs, because he was divorcing his wife and marrying a 1990 Andrew graduate who had been in the Winter Guard Program the year before. Vasquez, however, testified that he took the season off because he was in an intensive apprenticeship program at his day job that required all of his time. He was rehired in Fall 1991, apparently on defendant Romano's recommendation, and remained an instructor until February 14, 1996, when he was arrested as a result of his relationships with Jane Doe I and Jane Doe II.

It is also uncontested that plaintiffs, as well as Vasquez, worked hard at keeping the relationships secret. Indeed, neither plaintiff knew of the other's involvement with Vasquez. Nor, apparently, were they aware that between April 1993 through August 1994 Vasquez had a sexual relationship with Skroch, a teacher-supervisor of the Winter Guard. There is also nothing in the record to demonstrate that any of the individual board members had actual knowledge of the situation.

### Discussion

### Federal Claims

#### Count I

In Count I, brought pursuant to 42 U.S.C. § 1983, plaintiffs charge the individual defendants with having "promulgated and maintained policies which fostered sexual abuse of minor female high school students at Andrew High School by Vasquez...." The doctrine of respondeat superior cannot be used to impose § 1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights. *Lanigan v. Village of East Hazel Crest, Illinois,* 110 F.3d 467, 477 (7th Cir.1997). Supervisory liability will be found, however, if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. *Id.* "Personal involvement is a prerequisite for individual liability in a § 1983 action. Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not personally involved. Rather, supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliber-

ate, reckless indifference." *Gossmeyer v. McDonald,* 128 F.3d 481, 491 (7th Cir.1997) (citations omitted).

In the instant case, there is no evidence clearly demonstrating that any of the individual defendants had actual knowledge of the sexual relationships between plaintiffs and Vasquez, or that they condoned or directly facilitated Vasquez's conduct. Therefore, they can be liable only if there are facts to support an inference that they acted with deliberate, reckless indifference, i.e., that they turned a blind eye to the evidence before them.

The facts regarding what each of the individual defendants knew are hotly contested. Plaintiffs assert in their brief that "there is ample evidence that Romano, Skroch and Otto knew about instances of sexual abuse between Vasquez and minor female students before and during the time in which plaintiffs were abused." Plaintiffs' citations to the record, however, do not support such a strong statement. At most, the record reveals that: (1) the individual defendants were aware of rumors about Vasquez and plaintiffs, which rumors plaintiffs consistently and unequivocally denied; (2) defendants knew that plaintiffs were helping Vasquez chart Winter Guard programs at his house after school hours; (3) Skroch and Otto discussed their own personal, sexual and marital lives with Winter Guard members; and (4) Skroch was having sexual relations with Vasquez. There is also testimony from one plaintiff that Skroch was aware of the situation between Vasquez and plaintiffs. This testimony was denied by Skroch. In addition, all of the individual defendants knew that Vasquez had married a former student shortly after her graduation.

■ Although there is no direct evidence establishing that any of the individual defendants had actual knowledge of Vasquez's relationships with plaintiffs, the evidence set forth above, if true, could lead a reasonable jury to conclude that some or all of the individual defendants had enough knowledge to suspect some improper activity and did nothing about it. Because the extent of that knowledge is in dispute and material to any claim that "they turned a blind eye" to Vas-quez's abuse of plaintiffs, summary judgment for either party on Count I is inappropriate and denied.

■ The individual defendants also argue that they are entitled to the defense of qualified immunity. Under this defense, "government officials performing discretionary functions are shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is clearly established when its contours are sufficiently clear so that a reasonable official would realize that what he is doing violates that right. *Gossmeyer,* 128 F.3d at 495. This does not mean that there must be a case directly holding that the official's exact conduct is illegal, only that "in light of preexisting law the unlawfulness must be apparent." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 645, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

There is no dispute that plaintiffs had a clearly established constitutional right to be free from Vasquez's sexual abuse. Defendants argue, however, that under existing case law, in particular *Jane Doe A By and Through Jane Doe B v. Special School District,* 901 F.2d 642, 646 (8th Cir.1990), they can be liable to plaintiffs only if they had actual notice of Vasquez' unconstitutional acts and then demonstrated deliberate indifference to those acts by failing to take sufficient remedial measures. Defendants argue that at most, the evidence demonstrates that some students, parents and possibly some or all of the individual defendants heard rumors about Vasquez and plaintiff Jane Doe I. At that time, several courts had held that an official's failure to act upon rumors does not constitute deliberate indifference. *See Gates v. Unified School District No. 449,* 996 F.2d 1035, 1043 (10th Cir.1993). Other courts had held that an official's failure to act, by itself, does not show condonation, encouragement, approval, or authorization of a subordinate's conduct. *See Stoneking v. Bradford Area School District,* 882 F.2d 720, 726 (3d Cir. 1989). Therefore, defendants argue that

based on existing law, no reasonable school official in their positions would have understood that he or she would be violating plaintiff's constitutional rights under the circumstances.

■ As noted above, however, the record regarding what each individual defendant knew about plaintiffs' relationships with Vasquez, and when he/she knew it, is replete with disputed facts. Defendants were certainly aware that Vasquez married a former Winter Guard member (Amy) shortly after her graduation from the high school. There is also evidence that at least one student informed Dr. Brown that Vasquez and Amy had had a "physical" relationship while Amy was still a student. There is evidence to suggest that Cummings and Skroch saw inappropriate touching between Vasquez and plaintiffs during school hours or at school sponsored or approved events. In addition, Skroch, who was a teacher/supervisor of the Winter Guard, had sexual relations with Vasquez from April 1993 through August 1994. At least one student testified that Cummings had told her to stay away from Vasquez. Again, although not conclusive, the court is persuaded that there is enough evidence in the record for a reasonable jury to decide that some or all of the individual defendants were aware of or "turned a blind eye" to Vasquez's unconstitutional conduct. Because that would violate clearly established law, defendants would not be entitled to qualified immunity. *See Stoneking,* 882 F.2d at 720. Because a material question of fact remains in dispute, defendants are not entitled to summary judgment on Count I based on the defense of qualified immunity.

### Count II

In Count II, plaintiffs allege that the District violated § 1983 by acquiescing and/or ratifying the actions or inactions of the individual defendants, resulting in policies, customs and/or practices that facilitated Vasquez's abuse of plaintiffs. The District has moved for summary judgment on Count II, arguing that plaintiffs have failed to present any evidence that an officially executed policy of, or *toleration of a custom by the District* resulted in the deprivation of plaintiffs' constitutional rights as defined by *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In their memorandum, plaintiffs identify two specific policies of the District that plaintiffs assert led to or resulted in Vasquez's ability to cause plaintiffs' constitutional injuries. Those "policies" asserted by plaintiffs are the District's decisions to: (1) rehire and retain Vasquez after he married Amy, his former student; and (2) designate Otto and Skroch as Vasquez' supervisors.[1]

In *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that local governments may be liable under § 1983 for constitutional injuries inflicted by their employees if their failure adequately to guard against such injuries through training and supervision rises to the level of "deliberate indifference" to the constitutional rights of citizens who come in contact with those employees. In *Canton,* a pretrial detainee sued the city alleging violation of his right to receive necessary medical attention while in police custody. The Supreme Court held that a claim for inadequate police training could form the basis for § 1983 liability, holding that a plaintiff seeking to establish municipal liability on a theory that a facially lawful municipal action has led an employee to violate a plaintiff's constitutional rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Id.* at 388, 109 S.Ct. 1197.

In the instant case, plaintiffs' claim against the District is based predominately on the

---

**1.** Plaintiffs also identify two "customs" that they allege were sufficiently widespread to support an inference that the District had to know about them: (1) Vasquez's allowing students to chart programs at his home; and (2) excluding parents from riding on the bus with Vasquez, the Winter Guard members and other supervisor-instructors. Although it does not appear that either of these alleged "customs" were pervasive enough constitute a usage so permanent as to have the force of law as required for municipal liability under *Monell,* 436 U.S. at 691, 98 S.Ct. 2018, the court need not reach this issue in light of its conclusion that disputed issues of fact remain regarding plaintiffs' policy claim.

District's decision to rehire Vasquez knowing that he had recently divorced his first wife and married Amy, a former Winter Guard member and recent Andrew High School graduate with whom he may have had physical contact while she was a student. Plaintiffs, relying on the Supreme Court's decision in *Canton*, argue that this single decision by the District constitutes a policy sufficient to satisfy *Monell*.

Recently, in *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), the Supreme Court examined the issue of whether a municipality can be liable under § 1983 for a single hiring decision. In *Brown*, an arrestee brought a § 1983 action against the county, the county sheriff, and a reserve deputy seeking to recover for injuries sustained while being forcibly removed from an automobile after it was stopped. The *Monell* claim against the county was based on the decision of the sheriff (who was the admitted policymaker for the county) to hire the deputy involved without adequately reviewing the deputy's background. The deputy, who was the son of the sheriff's nephew, had a record of driving infractions and had pleaded guilty to various driving-related and other misdemeanors including assault and battery, resisting arrest and public drunkenness. The jury found in favor of the plaintiff, and the appellate court affirmed, based on the sheriff's decision to hire the deputy. The Supreme Court reversed, holding that the county was not liable for the sheriff's isolated decision to hire the deputy without adequate screening because the plaintiff had not demonstrated that the sheriff's decision reflected a "conscious disregard for a high risk that [the deputy] would use excessive force in violation of [the plaintiff's] federally protect right." *Id.* 117 S.Ct. at 1394.

In reaching its conclusion, the Court noted that "cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause," because "in the broadest sense every injury is traceable to a hiring decision." Thus, the Court cautioned, a fail-

ure to adhere to the rigorous requirements of culpability and causation results in a collapse of municipal liability into respondeat superior liability. *Id.* at 1393–94.

▮ In discussing the elements of culpability and causation, the Court stated that although inadequate screening of an applicant's record may reflect indifference to an applicant's background, that is not the indifference relevant for purposes of a legal inquiry into municipal liability under § 1983. To establish such liability, a plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of a decision to hire the applicant would constitute the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference. *Id.* at 1392. Therefore, for municipal liability there must be a definite connection between the background of the applicant and the specific constitutional violation alleged. The Court emphasized, *id.* at 1392 (emphasis added):

> A finding of culpability simply can not depend on the mere probability that *any* officer inadequately screened will inflict *any* constitutional injury. Rather it must depend on the finding that *this officer* was highly likely to inflict the *particular injury* suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

▮ In the instant case, there is evidence in the record to suggest that the District decided to rehire Vasquez with some knowledge that he may have engaged in an extramarital sexual relationship with a student (Amy). If plaintiffs can prove that to be true, Vasquez would have been violating Amy's constitutional rights. From that, a jury could conclude that a decision to ignore Vasquez' relationship with Amy would reflect more than just an indifference to Vasquez'

record, but a deliberate indifference to plaintiffs' constitutional rights, and that it was highly likely that Vasquez would do the same thing with other students that he had done with Amy. Thus, as alleged by plaintiffs, *this* instructor was highly likely to inflict the *particular* injury suffered by plaintiffs. What exactly the District knew about Vasquez's relationship with Amy when it rehired him is in dispute. Both Vasquez and Amy have denied having a sexual relationship while Amy was a student. Nevertheless, if plaintiffs can prove that upon proper inquiry the District could have discovered that Vasquez had abused Amy, it may be able to establish that his abuse of plaintiffs would have been a plainly obvious consequence of the hiring decision. Accordingly, the District's motion for summary judgment on Count II is denied.

### State Claims

In Counts III and IV, plaintiffs allege that the District willfully and wantonly hired and retained Vasquez in violation of Illinois common law and the Illinois School Code, 105 ILCS 5/10–22.34a and 2234b. In Count VI, plaintiffs allege that the individual defendants willfully and wantonly failed to supervise Vasquez, and failed to report Vasquez' conduct in violation of the School Code and the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 *et. seq.* Defendants have moved for summary judgment on all three counts, arguing that they are immune from liability under the Local Governmental Employees Tort Immunity Act ("the Tort Immunity Act"), 745 ILCS 10/1–101 *et. seq.*

Section 3–108(a) of the Tort Immunity Act provides:

> Except as otherwise provided by this Act and subject to subdivision (b) [not relevant here] neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property.

■ The section unambiguously grants immunity from liability that would otherwise arise from both negligent and willful and wanton conduct. *Payne v. Lake Forest Community High School District 115,* 268 Ill. App.3d 783, 206 Ill.Dec. 67, 644 N.E.2d 835 (2d Dist.1994). Therefore, if applicable, the section bars plaintiffs' claims in Counts IV and VI against defendants for negligent supervision, and failure to report.

■ Plaintiffs argue that § 3–108 applies only to physical injuries occurring in the use of public property, and that the statute is inapplicable because defendant's failure to supervise Vasquez does not arise from the use of public property. Plaintiffs are wrong. Their claims are based on defendants' failure to supervise Vasquez in his role as Director of the Winter Guard. While none of the sexual activity is alleged to have occurred on school property, defendants' obligation and ability to supervise Vasquez arises out of his school position, and the conduct plaintiffs assert gave defendants knowledge occurred either at school or at school sponsored functions. Accordingly, the court concludes that the section applies to plaintiffs' claims.

Section 2–201 of the Tort Immunity Act provides:

> Except as otherwise provided by statute, a public employee serving in a position involving the determination of a policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

■ Plaintiffs do not argue that the District's decision to hire Vasquez is not an exercise of discretion covered by the section. Instead, they argue that § 2–201 (and § 3–108) do not apply to allegations of willful and wanton conduct because §§ 24–24 and 34–84a of the Illinois School Code provide immunity for negligence only. Plaintiffs assert that when, as here, the School Code provides the underlying authority for the claim at issue, § 202 of the Tort Immunity Act applies. That section provides that a public employee is not liable for an act or omission in the execution or enforcement of any law unless such act constitutes willful and wanton conduct. *See Mancha v. Field Museum of Natural History,* 5 Ill.App.3d 699, 283 N.E.2d 899 (1st Dist.1972).

This argument was recently rejected by the Illinois Appellate Court in *Henrich v. Libertyville High School,* 289 Ill.App.3d 809,

225 Ill.Dec. 191, 683 N.E.2d 135 (2d Dist. 1997), in which a student sued a high school and school district for personal injury damages arising out of a teacher requiring the student to participate in a waterbasketball game in physical education class, despite a letter from the student's doctor advising that the student was permanently restricted from contact sports. The court first found that § 3–108 of the Tort Immunity Act applied and included immunity for willful and wanton conduct. The court then rejected the plaintiff's argument that § 24–24 of the School Code should supercede § 3–108(a) of the Tort Immunity Act. It found that "under the plain and unambiguous language of § 3–108(a), a school district is not liable for injuries caused by improper supervision of an activity on public property." *Id.* at 817, 225 Ill.Dec. 191, 683 N.E.2d 135. Because the legislature did not express any exceptions to the immunity provided by § 3–108(a), the court refused to read one in. Accordingly, this court rejects plaintiffs' claims that § 2–201 or 3–108 do not apply because plaintiffs' underlying claims are based on the Illinois School Code.

Finally, plaintiffs argue that defendants' duty to report sexual abuse is a ministerial act, not a discretionary act covered by § 2–201. A ministerial act is one that leaves nothing for judgment or discretion. *People ex rel. Munson v. Bartels,* 138 Ill. 322, 27 N.E. 1091 (1891). It is undisputed that defendants are mandated by state law to report suspected sexual abuse. However, the reporter must first determine what constitutes "suspect sexual abuse" within the meaning of the reporting act, and whether such abuse likely occurred. Reaching such a conclusion clearly entails the exercise of a degree of judgment and discretion. Accordingly, the court concludes that § 2–201 applies to plaintiffs' claims based on failure to report under the Reporting Act.

### Conclusion

For the reasons set forth above, plaintiffs' motion for partial summary judgment is denied. Defendants' motion for summary judg-ment is denied as to Counts I and II and granted as to Counts III, IV and VI.